IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GREG W. SCHOENLEIN,            )   CIV. NO. 12-00046 LEK/KSC
#A5019148,                     )
                               )   ORDER DENYING AMENDED
          Petitioner,          )   PETITION AND CERTIFICATE OF
                               )   APPEALABILITY
     vs.                       )
                               )
TODD THOMAS,                   )
                               )
          Respondent.          )
_____)


## ORDER DENYING AMENDED PETITION AND
## CERTIFICATE OF APPEALABILITY

          Before the court is pro se petitioner Greg W.

Schoenlein's amended petition for writ of habeas corpus brought

pursuant to 28 U.S.C. § 2254 ("Amended Petition").  Am. Pet.,

Doc. No. 32.  Schoenlein challenges his conviction in the Circuit

Court of the First Circuit, State of Hawaii ("circuit court") in

CR. No. 04-1-2287, and the circuit court's imposition of

sentences in CR. No. 05-1-2431 to run concurrently with each

other but consecutively to that imposed in CR. No. 04-1-2287.

          The Office of the Prosecuting Attorney for the City and

County of Honolulu and the Hawaii Department of the Attorney

General have filed a joint Answer to the Petition.  *See* Doc. No.

48.  Although given an opportunity to do so, Schoenlein has not

filed a Reply.  For the following reasons, the court DENIES the

Amended Petition for lack of merit and DENIES a certificate of

appealability.

# I. <u>BACKGROUND</u>

On or about November 28, 2004, Schoenlein was indicted in CR. No. 04-1-2287, for Theft in the Second Degree in violation of Hawaii Revised Statutes ("HRS") § 708-831(1)(b). *See* Pet'r Ex., Doc. No. 6; *see also Hawaii v. Schoenlein*, 1PC04-1-002287, http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm (last accessed Apr. 26, 2014).

On or about April 12, 2005, while in custody in CR. No. 04-1-2287, Schoenlein attempted to escape, first from the Oahu Community Correctional Center ("OCCC"), and then from the Queen's Medical Center ("QMC"), where he had been taken for injuries sustained during his attempted escape from OCCC. *See* Resp.'s Ex., Doc. No. 13-5, PageID #98 (Grand Jury Indictment); *see also*, Resp.'s Ex., Doc. No. 48-2, PageID #973 (Summary Disposition Order). Schoenlein was later released on bail. *See* Resp.'s Ex., Doc. No. 48-7, PageID #1150-51 (circuit court Findings of Fact ("FOF"), Conclusions of Law ("COL"), dated Nov. 17, 2008).

On November 22, 2005, a Hawaii Grand Jury indicted Schoenlein in Cr. No. 05-1-2431, for Attempted Escape in the First Degree and Attempted Escape in the Second Degree, both in violation of HRS §§ 710-1020 and 705-500. Resp.'s Ex., Doc. No. 13-5; *see also*, *Hawaii v. Schoenlein*, 1PC05-1-02431, http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm.

On May 11, 2006, after several futile attempts to locate him, the Hilo Police Department arrested Schoenlein; he posted bail the following day. Resp.'s Ex., Doc. No. 48-7, PageID #1151 (FOF & COL). On May 15, 2006, Schoenlein appeared for his arraignment and plea and trial was set for the week of July 17, 2006. *Id.* On July 14, 2006, Schoenlein's attorney, Deputy Public Defender Randall Hironaka, moved to continue trial until September 18, 2006, to allow for a determination of Schoenlein's fitness to proceed. *Id.*, PageID #1151-52. The circuit court granted the motion over the State's objection. *Id.*

That same day, however, Schoenlein was taken into extradition custody on unrelated charges pursuant to a Michigan Governor's Warrant for extradition; he was extradited to Michigan on August 10, 2006. *See id.; see also*, Pet'r Doc. No. 6 (Chronological List of Events). On September 14, 2006, Hironaka informed the circuit court that Schoenlein had been extradited to Michigan before he could file a motion for mental examination. *Id.*, PageID #1152. The circuit court held regular status conferences thereafter with the deputy attorney general ("DAG") and Hironaka. *Id.* Schoenlein says he was convicted on his Michigan charges on or about September 19, 2006, although this is not independently reflected in the record. *See* Am. Pet., Doc. No. 29, PageId #828.

On April 2, 2007, the deputy attorney general ("DAG") informed the circuit court that the Office of the Attorney General ("AG") had placed a detainer on Schoenlein in CR. No. 04-1-2287. Resp.'s Ex., Doc. No. 48-7, PageID #. On June 1, 2007, the AG filed the appropriate paperwork with Michigan under the Interstate Agreement on Detainers ("IAD").[1] The State did not file a detainer regarding Schoenlein's attempted escape charges in CR. No. 05-1-2431, however. *See* Resp.'s Ex., Doc. No. 13-7, PageID #105 (Summary Disposition Order). On July 19, 2007, the AG received Schoenlein's "Interstate Agreement on Detainers: Notice of Place of Imprisonment and Request for Disposition of Indictment, Informations or Complaints." Resp.'s Ex., Doc. No. 48-7 (Findings of Fact, Conclusions of Law), PageID #1152. The circuit court did not receive a copy of Schoenlein's Notice. *Id.*

On November 1, 2007, Schoenlein was extradited from Michigan to Hawaii. *Id.* On November 26, 2007, the circuit court set CR. Nos. 04-1-2287 and 05-1-2431 for firm trial dates during the week of December 31, 2007. *Id.* At trial call on December 17, 2007, Hironaka requested a continuance in chambers to research and file a motion to dismiss. *Id.*, PageID #1153. The circuit court granted Hironaka's request and set a status conference for January 25, 2008. *Id.*

---

[1] The IAD is set forth at § 2, Art. I, *et seq.*, 18 U.S.C. App., Pub. L. 91-538, 84 Stat. 1397, Dec. 9, 1970. It is codified in Hawaii under Chapter 834 of Hawaii Revised Statutes ("HRS").

On January 24, 2008, Hironaka filed a motion to dismiss for speedy trial violations under Rules 48 and 9 of the Hawaii Rules of Penal Procedure ("HRPP").  At the hearing on the motion to dismiss on January 28, 2008, however, Hironaka moved to withdraw as Schoenlein's counsel.  *Id.*  After confirming that this was Schoenlein's desire, the circuit court granted Hironaka's motion to withdraw.  The speedy trial motion was then withdrawn.  *Id.*  The circuit court appointed Jerry Wilson, Esq., to represent Schoenlein on January 29, 2008.  *Id.*  The trial date was then continued several times to allow Wilson to prepare for trial and to accommodate the circuit court's schedule.  *Id.*

On April 16, 2008, Wilson moved to dismiss the indictments for violation of HRPP 48, Speedy Trial, and under the IAD, HRS § 834.  *Id.*  The circuit court held a hearing on this motion on May 19 and 30, 2008.  *Id.* at PageID #1154.

On June 2, 2008, a bench trial on Schoenlein's escape charges in CR. No. 05-1-2431 commenced.  Resp.'s Ex., Doc. No. 48-4, PageID #1032.  On June 4, 2008, Schoenlein pled guilty to Theft in the Second Degree in CR. No. 04-1-2287 pursuant to a plea agreement.  Resp.'s Ex., Doc. No. 13-3, PageID #94-95.  On June 5, 2008, the circuit court found Schoenlein guilty of Attempted Escape in the First and Second Degrees.  Resp.'s Ex., Doc. No. 48-10, PageID #1308.

On September 22, 2008, the circuit court sentenced Schoenlein to five years incarceration for Theft in the Second Degree in CR. No. 04-1-2287, "to run concurrently with any other sentence [he] is serving, and with credit to be given for time already served." Resp.'s Ex., Doc. No. 13-4, PageID #97. The court then sentenced Schoenlein to five years incarceration for Attempted Escape in the Second Degree and ten years incarceration for Attempted Escape in the First Degree in CR. No. 05-1-2431, concurrent to each other but consecutive to any other sentence, with credit for time served. Resp.'s Ex., Doc. No. 13-5, PageID #100.

Schoenlein commenced this action on January 20, 2012. Pet., Doc. No. 1. Magistrate Judge Kevin S.C. Chang determined that Schoenlein's claims were not fully exhausted and that he had two petitions for post-conviction relief pending in the Hawaii courts that raised claims raised in this action. *See* Am. Findings and Recommendations Re: Exhaustion of State Remedies, Doc. No. 24. On September 10, 2012, Schoenlein requested leave to file an amended petition that raised only exhausted claims and a stay of the action until his unexhausted claims were heard by the Hawaii state courts. Pet'r's Response, Doc. No. 27. On November 6, 2012, Schoenlein submitted the present Amended Petition, raising two fully exhausted claims for relief. Am. Pet., Doc. No. 32. On November 7, 2012, the court stayed this

action while Schoenlein exhausted his other claims.  Order, Doc.
No. 33.

On February 13, 2014, Magistrate Judge Chang held a
status conference regarding the conclusion of Schoenlein's state
post-conviction proceedings.  Doc. No. 46.  At the status
conference, Schoenlein elected to proceed with the two exhausted
claims in his Amended Petition.  *Id.*  Schoenlein alleges: (1) the
State violated the IAD when the Attorney General's Office
deliberately delayed filing the detainer in CR. No. 04-1-2287,
resulting in an unconstitutional delay of trial (Ground One); and
(2) the circuit court violated the Eighth Amendment by sentencing
him to serve his sentences in CR. No. 05-1-2431 consecutively to
his sentence in CR. No. 04-1-2287.  *See* Am. Pet., Doc. No.
PageID #827-31, #833-35.

## II. <u>LEGAL STANDARD</u>

"Federal habeas relief may not be granted for claims
subject to § 2254(d) unless it is shown that the earlier state
court's decision 'was contrary to' federal law then clearly
established in the holdings of [the Supreme] Court; or that it
'involved an unreasonable application of' such law; or that it
'was based on an unreasonable determination of the facts' in
light of the record before the state court."  *Harrington v.
Richter*, --- U.S. ---, 131 S. Ct. 770, 785 (2011) (quoting
*Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal citations

modified); 28 U.S.C. § 2254. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

A state court's decision is "contrary to" clearly established law if it "applies a rule that contradicts the governing law" set forth in United States Supreme Court cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme Court] and nevertheless arrives at a result different from . . . precedent." *Williams*, 529 U.S. at 405–06. Although the source of clearly-established federal law is limited to Supreme Court cases, circuit law may be considered to determine whether a particular application is unreasonable or whether the law is "clearly established." *See Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. To be considered an "unreasonable application" of clearly established federal law, the state court decision must be more than just incorrect or

8

erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Its application of federal law must be "objectively unreasonable." *Id*.

Additionally, a state court's factual determinations "shall be presumed to be correct," and a petitioner can overcome that presumption only by "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000). The petitioner's burden is considerable, because "this standard means that the federal habeas court must 'more than simply disagree' with the state fact-finding." *Washington v. Schriver*, 255 F.3d 45, 55 (2nd Cir. 2001) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983)). Moreover, a federal habeas court's consideration whether a state court's decision was contrary to federal law, involved an unreasonable application of such law, or was based on an unreasonable determination of the facts, is limited to the record before the state court at the time the claims were adjudicated. *See Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398, 1400 n.7 (2011).

## III. <u>DISCUSSION</u>

This court must consider whether the Intermediate Court of Appeals' ("ICA") decision that the State did not violate Schoenlein's rights under the IAD, and that his consecutive sentences do not violate the Eighth Amendment, constitutes error

clear enough to permit relief under 28 U.S.C. § 2254(d).

## A.   The State Did Not Violate Schoenlein's Constitutional Rights by Allegedly Violating the IAD

Schoenlein primarily argues that the State violated the IAD when it delayed lodging a detainer in CR. No. 04-1-2287.  He alleges this delayed his extradition to Hawaii, and therefore, unconstitutionally delayed the start of his trial.  He suggests that the State was required to lodge a detainer immediately upon his conviction in Michigan.  He further argues that after he requested to be returned to Hawaii for trial, the State failed to try him within 180 days as mandated by the IAD.  *See* 18 U.S.C. App. 2, § 2, Art. III(a).  Schoenlein concedes the failure to commence trial within 180 days was occasioned by his attorney's request for a continuance, but argues the circuit court violated the IAD by granting the continuance because Hironaka made the request in chambers without Schoenlein's permission rather than in "open court."  *See id.*

### 1.   *The IAD*

"The IAD is an interstate compact entered into by 48 States, the United States, and the District of Columbia."  *United States v. Lualemaga*, 280 F.3d 1260, 1263 (9th Cir. 2002) (holding that the government's failure to provide adequate notice informing a Hawaii prisoner of his rights under the IAD does not constitute grounds to dismiss an indictment); *see also New York*

*v. Hill*, 528 U.S. 110, 111 (2000).  It creates uniform procedures for lodging and executing a detainer by one state against a prisoner serving a sentence in another.  *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001); *Lualemaga*, 280 F.3d at 1263.  It was enacted to provide the "expeditious and orderly disposition" of charges pending in divergent jurisdictions, and prevent problems associated with the use of detainers, that can "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation."  18 U.S.C. app. 2 § 2 art. I.

"[T]he IAD is a federal law subject to federal construction."  *Hill*, 528 U.S. at 111.  Federal habeas review of IAD violations is limited to errors constituting "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."  *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Cross v. Cunningham*, 87 F.3d 586, 587–88 (1st Cir. 1996); *see also Hitchcock v. United States*, 580 F.2d 964, 966 (9th Cir. 1978) (holding that a cognizable violation of the IAD must rise to the level of a "fundamental defect" or have "prejudiced" the rights of the defendant).

Under Article III of the IAD, a prisoner "shall be brought to trial within [180] days" after he delivers written notice "to the prosecuting officer *and the appropriate court*,"

seeking final disposition of the charges against him set forth in a detainer lodged under the IAD. 18 U.S.C. app. 2 § 2, Art. III(a) (emphasis added). Article III allows for reasonable continuances of the 180 days, "for good cause shown in open court, the prisoner or his counsel being present[.]" *Id.*

Under Article IV of the IAD, a prosecutor can also seek the return of a prisoner to face trial after lodging a detainer. 18 U.S.C. App. 2, § 2, Art. IV(a). The court with jurisdiction of the indictment, information, or complaint on which the detainer is based must approve, record, and transmit such a request to the sending State. *Id.,* Art. IV(b). If the government invokes the return of a prisoner under Article IV, trial must be "commenced within [120] days of the arrival of the prisoner in the receiving State . . ." *Id.*, Art. IV(c). The IAD's 120 and 180 day time periods "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." *Id.*, Art. VI(a).

### 2. *Analysis Ground One*

First, Schoenlein's main premise, that the State violated the IAD by failing to lodge a detainer in Michigan earlier than June 1, 2007, is simply incorrect. The state has no duty under the IAD to file a detainer within a certain amount of time. Rather, the IAD's provisions apply only *after* a detainer

is filed. That is, once a detainer is filed, either the state or the prisoner can request that the prisoner be transferred to the requesting state for prosecution, but the IAD's "time limits do not apply at all unless either the prisoner or the receiving State files a request." *See Hill*, 528 U.S. at 111–12.

Second, the IAD mandates dismissal of an indictment in only three instances: (1) if a prisoner is returned to the sending state before completion of trial in the receiving state; (2) if the receiving state fails to accept temporary custody of the prisoner after filing a detainer; and (3) if a prisoner is not brought to trial within 180 days after the state properly received a prisoner's IAD request for disposition of his charges, or within 120 days of a prisoner's transfer to a receiving state, when an officer of the receiving State requested that transfer. *Lualemaga*, 280 F.3d at 1263-64. Failing to lodge a detainer under the IAD does not constitute a reason for dismissing Schoenlein's indictment. *Id.* The Hawaii courts' determinations that the DAG did not violate the IAD by waiting until June 1, 2007, to lodge a detainer under the IAD in Michigan was neither contrary to nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Hill*, 528 U.S. at 111–12.

Third, although the ICA accepted for purposes of his appeal that Schoenlein properly filed his request to be returned

13

for trial, the record does not support this conclusion. The circuit court clearly held that it never received a copy of Schoenlein's "Interstate Agreement on Detainers: Notice of Place of Imprisonment and Request for Disposition of Indictment, Informations or Complaints." *See* Resp.'s Ex., Doc. No. 48-7 (FOF & COL), PageID #1152. The Supreme Court strictly interprets Article III's provision that a defendant must "cause[] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction" written notice of his request, to mean the 180-day clock does not start until the defendant's demand "has actually been delivered to the district court and prosecuting officer that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 52 (1993) ("We hold that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition . . . has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."). The record before the circuit court and this court shows that Schoenlein failed to comply with this provision of Article III of the IAD.

Fourth, even accepting that Schoenlein actually delivered his request for disposition of the IAD detainer to the prosecuting officer *and* the circuit court, his claim fails. As the ICA and circuit court held, if Schoenlein duly noticed his

14

request on July 19, 2007, Article III's 180-day time limit would have expired on January 15, 2008.  Schoenlein argues that Hironaka's December 17, 2007, request for a continuance did not waive his IAD right to be tried within 180-days because it was made in chambers, rather than "in open court," and without his permission.  He is mistaken.

In *Hill*, the Supreme Court stated that, although "no explicit provision of the IAD prescribes the effect of a defendant's assent to delay on the applicable time limits," the general rule "presumes the availability of waiver." *Hill*, 528 U.S. at 114.  In accord with that presumption, a prisoner's attorney may waive the 180-day period without the prisoner's express consent, "to manage the conduct of the trial." *Id.* at 115 (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)). "Scheduling matters are plainly among those for which agreement by counsel generally controls." *Id.* "As with other tactical decisions, requiring personal, on-the-record approval from the client could necessitate a lengthy explanation that the client might not understand and that might distract from more pressing matters as the attorney seeks to prepare the best defense." *Gonzalez v. United States*, 553 U.S. 242, 250 (2008).  And, as the circuit court held, if a defendant's attorney can waive the 180-day time limit to enable presentation of a properly supported motion to dismiss, likewise, the attorney can waive doing so in

open court.

Federal habeas review of IAD violations is limited to errors constituting "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed*, 512 U.S. at 348 (quotation omitted). When a defendant had a chance to alert the trial court that he wanted trial to begin before the IAD's time limits ran, however, and did not object until after the clock had run, "cause for collateral review scarcely exists." *Id.* at 349. Hironaka may not have purposely obscured the IAD's 180-day time limit when he sought the continuance on December 17, 2007, as happened in *Reed*. *See id.* He nonetheless sought the continuance and failed to mention the IAD's time limits when the circuit court set the status conference on January 25, 2008, ten days after the 180-day limit would have run. He never alerted the circuit court about this issue at any time during the month before the status conference, nor did he mention it at the hearing when he withdrew as counsel. The ICA's determination that Hironaka implicitly waived the "open court" requirement and the 180-day time limit is neither contrary to federal law nor an unreasonable determination of the facts.

Finally, Schoenlein does not assert that the alleged IAD violation denied him the opportunity to secure a fair trial, actually impaired his ability to prepare and present his defense,

or hindered an appeal.  Rather, he simply asserts that his speedy trial rights were violated because Hironaka made his request for a continuance in chambers rather than in open court.  Absent allegations of prejudice, however, Schoenlein's claims are not cognizable under federal habeas review.  *Id.* at 342 (holding that "a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement"); *Reilly v. Warden*, 947 F.2d 43, 44 (2d Cir. 1992) (holding that such violations of the IAD are not cognizable under 28 U.S.C. §§ 2254 and 2255); *Veta v. Ryan*, 2010 WL 749935, at *5-6  (D. Ariz., Mar. 4, 2010); *Keeling v. Varner*, 2003 WL 21919433, at *5 (E.D.N.Y. June 17, 2003) (holding that absent a showing of prejudice, petitioner's claim that his speedy trial rights were violated because he was not tried in accordance with the IAD was not cognizable in federal habeas review), *aff'd*, 142 Fed. Appx. 506 (2d Cir. 2005).

**B.    Schoenlein's Consecutive Sentences Do Not Violate Eighth
        Amendment**

Schoenlein argues that the circuit court's imposition of sentences in CR. No. 05-1-2431 to run consecutively to that imposed in CR. No. 04-1-2287, violates the cruel and unusual punishment clause of the Eighth Amendment.

"The Eighth Amendment does not require strict

proportionality between crime and sentence." *Ewing v. California*, 538 U.S. 11, 23 (2003). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Successful challenges to the proportionality of particular sentences, however, are "exceedingly rare" outside "the context of capital punishment." *Solem v. Helm*, 463 U.S. 277, 289–90 (1983). Generally, as long as the sentence imposed by the state trial court does not exceed the statutory maximum, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment. *United States v. McDougherty*, 902 F.2d 569, 576 (9th Cir. 1990). That is, under the Eighth Amendment, "legislatures [have] broad discretion to fashion a sentence that fits within the scope of the proportionality principle — the precise contours of which are unclear." *Lockyer*, 538 U.S. at 76 (internal quotations and citations omitted).

Theft in the Second Degree and Attempted Escape in the Second Degree are Class C felonies with a maximum term of five years. *See* HRS § 706-660(1)(b). Escape in the First Degree is a Class B felony punishable by a maximum term of imprisonment of ten years. *See* HRS § 706-660(a). Schoenlein's sentences are therefore each separately within Hawaii's statutory maximum penalty ranges and do not offend the Eighth Amendment on that basis.

Nonetheless, although a sentence is within the statutory maximum, its constitutionality may still be evaluated by considering three factors: (1) the gravity of the offense and harshness of the penalty; (2) a comparison with sentences imposed on other crimes in the same jurisdiction; and (3) a comparison with sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290-92 (1983).

Here, the circuit court carefully considered the seriousness of Schoenlein's attempted escapes, his past criminal history, and the harshness of the penalties it was imposing. *See* Tr. of Sentencing, Sept. 22, 2008, Doc. 13-19, PageID #349-351. The circuit court noted that Schoenlein's attempted escapes were not run-of-the-mill attempts where an inmate returns late from a work-furlough program, that might justify leniency. Rather, the court found that Schoenlein's conduct during the attempted escapes potentially put himself and others in grave danger. *See id.*, PageID #349-351. The court flatly rejected Schoenlein's contention that he did not intend to harm anyone but himself when he tried to seize the guard's weapon while at the Queen's Hospital. As the court noted, "even if your purpose was to kill yourself . . . or to make the officer kill you, . . . suicide by cop . . . isn't fair to the person pulling the trigger . . . because they have to live[] with killing somebody." *Id.* at PageID #350. The circuit court specifically considered "the

nature and circumstances" of Schoenlein's offenses, his prior criminal history in Hawaii and Michigan, and the need to deter similar escape attempts, when imposing sentence. *See Ewing*, 538 U.S. at 29.

Schoenlein does not address and the record does not support a finding that his sentences are disproportionately high to those imposed in other serious sentences in Hawaii. But the circuit court's conclusion that Schoenlein's actions during his attempted escape and his criminal history were serious enough to justify his sentence was a reasonable application of the facts to clearly established federal and state law. *See Ewing*, 538 U.S. at 29-30 (holding that the sentence was justified by defendant's "long, serious criminal record," and the state's "public-safety interest in incapacitating and deterring recidivist felons"); *see also Lockyer*, 538 U.S. at 66-67 (upholding a sentence where petitioner's prior offenses included two counts of misdemeanor theft, three counts of first-degree residential burglary, two counts of transportation of marijuana, and escape from federal prison).

Moreover, in light of *Lockyer*, where the Supreme Court upheld a twenty-five years to life sentence for a triggering offense of stealing $153.54 worth of videotape, this court cannot conclude that Schoenlein's punishment for attempted escape is grossly disproportionate to his offense. 538 U.S. at 66; *see*

*also*, *e.g.*, *Harmelin*, 501 U.S. at 961 (upholding a life sentence without the possibility of parole imposed against a first-time offender convicted for possession of 672 grams of cocaine under a Michigan non-recidivist statute); *Rummel v. Estelle*, 445 U.S. 263, 264–68, 284–85 (1980) (upholding a twenty-five years to life sentence with the possibility of parole under a Texas recidivist statute, where the defendant was convicted of obtaining $120.75 by false pretenses and had prior convictions (and served prison terms) for fraudulent use of a credit card (for $80 worth of goods and services) and passing a forged check (for $28.36)); *Hutto v. Davis*, 454 U.S. 370, 370–71, 375 (1982) (*per curiam*) (affirming forty–year sentence for possession of nine ounces of marijuana).

Finally, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout v. Cooke*, --- U.S. ---, 131 S. Ct. 859, 861–62 (2011). To the extent he protests only the consecutive imposition of his sentences, as it appears, Schoenlein fails to state a cognizable claim.

If Schoenlein's total sentences do not violate the

Eighth Amendment and the imposition of consecutive terms is a matter of state law, then the ICA's rejection of this claim was reasonable and is entitled to deference. Thus, the ICA's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, requires the district court to issue or deny a certificate of appealability when it enters a final order that is adverse to a petitioner challenging a state court conviction or sentence. *See also*, 28 U.S.C. § 2253(c)(1). The standard for issuing a certificate of appealability is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a constitutional claim is rejected on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This court finds that reasonable jurists would not find the denial of Schoenlein's claims was debatable or wrong and DENIES a certificate of appealability.

//

//

//

//

## V.   CONCLUSION

Schoenlein's Petition is DENIED as is any request for a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2).  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 20, 2014.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Schoenlein v. Thomas,* Civ. No. 12-00046 LEK/KSC; psas habeas 2014;Schoenlein 12-46 lek (dny 2 cls); J:\Denise's Draft Orders\LEK\Schoenlein 12-46 lek (deny 2 cls.).wpd